**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

> ELECTRONICALLY
> FILED
> Apr 17 2018
> U.S. DISTRICT COURT
> Northern District of WV

Diana Mey
     Plaintiff,

vs.                                                      **Case No.** 5:18-cv-54 Bailey

One United Fidelity Group, LLC, a.k.a
One United Global Group, LLC,
a.k.a. One Work LLC
a.k.a. US Senior Benefits,
Americo Life, Inc. a.k.a.
American Financial Life and Annuity
Insurance Company, a.k.a. Americo, a.ka.
AFLAIC, and
Drive BPO,
     Defendants.

## COMPLAINT

Now comes the Plaintiff, Diana Mey, by and through her attorney, Benjamin Sheridan, of

the law firm of Klein and Sheridan, LC, and hereby states as follows:

### JURISDICTION AND PARTIES

1. The Plaintiff, Diana Mey, is a resident of Ohio County, West Virginia.

2. Jurisdiction of this Court arises pursuant to 47 U.S.C. § 227 et Seq.

3. This action arises out of Defendants' violations of the Telephone Consumer Protection Act

   ("TCPA"), violations of orders, rules and regulations promulgated the Federal

   Communications Commission (FCC) relating to the TCPA, the National Do Not Call

   registry and by its invasion of Plaintiff's privacy by repeatedly via an automated dialer

   system.

4. The Plaintiff is a person who falls under the protection of Article 2 of the West Virginia

   Consumer Credit and Protection Act (herein "WVCCPA") and is entitled to the remedies

   set forth in Article 5 of the WVCCPA.

1

5. The Defendant, One United Fidelity Group, LLC, a.k.a. One United Global Group, LLC ("One United"), aka One Work LLC, a.k.a. US Senior Benefits, is a corporation having its principal offices in a state other than West Virginia and which does business in West Virginia.

6. The Defendant, Americo Life, Inc. a.k.a. American Financial Life and Annuity Insurance Company, a.k.a. Americo , a.k.a. AFLAIC ("Americo") is a corporation having its principal offices in a state other than West Virginia and which does business in West Virginia.

7. The Defendant, Drive BPO, is a corporation having its principal offices in a country other than the United States and which does business in West Virginia.

8. The Defendants are debt collectors as defined by *West Virginia Code* §46A-2-122(d) engaging directly or indirectly in debt collection as defined by *West Virginia Code* §46A-2-122(c) within the State of West Virginia, including, Ohio County, West Virginia.

9. Venue is proper in this Court because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## FACTUAL ALLEGATIONS

10. Plaintiff has a telephone number that is assigned to a cellular telephone service.

11. All of Plaintiff's telephone numbers have been on the national "Do Not Call" registry for more than 30 days.

12. On or about October 2, 2017 at approximately 3:29 PM, Ms. Mey received a call from a phone number associated with the Defendants (210) 679-7143.

13. Upon information and belief, the phone call was generated using an automated random telephone dialing system or ATDS.

2

14. During the call, a "Chuck" from "US Senior Benefits" quizzed the Plaintiff about a final expense plan.

15. Ms. Mey's phone number has been on the national Do Not Call registry for more than 30 days.

16. Ms. Mey has never provided US Senior Benefits or any of the other Defendants authorization to call her.

17. Upon information and belief, Chuck with US Senior Benefits was selling insurance.

18. Plaintiff requested the name of the insurance underwriter, but Chuck would not provide it.

19. Chuck informed Ms. Mey that a Bruce Metsinger would be contacting her later.

20. Defendants then called at least four times from the telephone number (325) 400-4917. The first three calls were answered by Ms. Mey's answering machine, and the fourth call connects with Plaintiff.

21. Upon information all four calls were placed using an ATDS.

22. On the fourth call, on or about October 5, 2017, a Bruce "with Senior Benefits for the State of West Virginia called the Plaintiff in follow up to the October 2, 2017 call.

23. During the call, Bruce represents that he is calling "on a dialer."

24. Upon information and belief, this call was placed using an ATDS.

25. Plaintiff advised Bruce that Plaintiff's phone number was on the Do Not Call ("DNC") registry and asked why she received a call.  Bruce informed her that he can't answer that question.

26. Plaintiff made a standard DNC request to the company and for their DNC policy, which she never received.

27. Bruce further informed Plaintiff that there is no such company as US Senior Benefits and that he works for One United Global.

28. Bruce then pitched an insurance policy underwritten by the Defendant Americo.

29. Upon information and belief, Americo knew or reasonably should have known that One United Global was placing automated calls and calls to individuals on the DNC registry on its behalf.

30. Plaintiff sent follow up emails to both CEO Scott Gifford of One United Global Group, LLC and Americo's in-house counsel Tony Luetkemeyer, requesting evidence that Plaintiff has provided prior express consent to be contacted. Plaintiff was never provided with any such evidence.

31. Subsequently, Mr. Glifford of One United emailed Plaintiff and informed her that a third defendant, Drive BPO, made multiple calls to Plaintiff prior to October 2, 2017.

32. On October 12, 2017, Mr. Gifford sent a threatening email to Plaintiff informing her that he would "come after you for any costs incurred with legal expenses for this gregarious (sic) accusations."

33. At no time did Plaintiff provide prior express consent for anyone to call her wireless number using equipment that has the capacity to store or produce random or sequential telephone numbers and / or with the use of a predictive dialer.

34. Defendant does not have, and has never had, an established business relationship with Plaintiff.

35. Plaintiff requested that Defendant send her a copy of its Do Not Call policy.

36. Despite this demand, Defendant failed to send a copy of its Do Not Call policy to Plaintiff.

COUNT I

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. §227(b)(3)(B)**

37. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated herein.

38. On information and belief, Defendants used an automatic telephone dialing system as defined by 47 USC § 227 (a)(1) when it made each and every call to Plaintiffs number assigned to a cellular telephone in the last four years.

39. On information and belief, Defendants did not have Plaintiff's prior express consent to contact Plaintiff at her wireless number using an automatic telephone dialing system.

40. Defendants made the calls to Plaintiff willfully.

41. Defendants made the calls to Plaintiff knowingly.

42. Defendants' acts in making the calls to Plaintiff were not accidental.

43. Plaintiff's privacy has been invaded as a result of Defendants' acts.

44. As a result of the Defendants' actions, Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

## COUNT II

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. §227(c)(5)**

45. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated herein.

46. Defendant made telephone solicitation calls to Plaintiff.

47. Plaintiff informed Defendants Plaintiff is on the Do Not Call Registry.

48. Upon information and belief, the Defendants knew or reasonably should have known that the Plaintiff was on the national "Do Not Call List."

49. Defendants made these telephone solicitations despite Plaintiff's number having been registered on the national "Do Not Call List for more than 30 days."

50. Plaintiff requested a copy of Defendants do-not-call policy.

51. Defendant failed to provide a copy of its do-not-call policies as requested by Plaintiff.

52. Defendants failed to place Plaintiff on its do-not-call-list.

53. On information and belief, Defendants failed to properly maintain or train its personnel how to comply with the TCPA and the FCC rules and regulations.

54. As a result of the Defendants' actions, Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

## COUNT III

### *INJUNCTIVE RELIEF*

55. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

56. Plaintiffs request that this Court grant it injunctive relief preventing Defendants, their agents, employees, representatives or their successors and assigns from taking any action contrary to or in violation of any part of the TCPA 47 U.S.C. § 227 pursuant to 47 U.S.C. § 227 (b)(3)(A).

## COUNT IV

### *COMMON LAW NEGLIGENCE*

57. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

58. Defendants negligently failed to train, supervise, monitor or otherwise control its employees to ensure that its employees did not violate the TCPA as alleged in Counts I and II.

59. As a result of the Defendants' actions, Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

### COUNT V

#### *COMMON LAW INVASION OF PRIVACY*

60. The Plaintiff incorporates the previous paragraphs as if fully set forth herein.

61. The Plaintiff has, and have, an expectation of privacy to be free from harassing and annoying telephone calls within the confines of Plaintiff's home.

62. The acts of the Defendants in placing telephone calls to Plaintiff's home telephone number invaded, damaged and harmed Plaintiff's right of privacy.

63. As a result of the Defendants' actions, the Plaintiff suffered emotional distress.

64. As a result of the Defendants' action, the Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress.

### DEMAND FOR RELIEF

Plaintiff demands from the Defendants:

a. damages pursuant to 47 U.S.C. § 227 (b)(3)(B) for each and every call in the amount of at least $500 for each such act that this Court finds were not made willfully or not made knowingly;

b.   damages pursuant to 47 U.S.C. § 227 (b)(3)(B) for each and every call in the amount of $1,500 for each such act that this Court finds were made willfully <u>or</u> were made knowingly; and

c.   damages pursuant to 47 U.S.C. § 227 (c)(5) for each and every failure to abide by the TCPA and FCC's do-not-call-list requirements in the amount of at least $500 for each such act that this Court finds were not made willfully or not made knowingly;

d.   damages pursuant to 47 U.S.C. § 227 (c)(5) for each and every failure to abide by the do-not-call-list requirements in the amount of $1,500 for each such act that this Court finds were made willfully <u>or</u> were made knowingly; and

e.   an order granting Plaintiff injunctive relief preventing Defendants, their agents, employees, representatives or their successors and assigns from taking any action contrary to or in violation of any part of the TCPA 47 U.S.C. § 227 pursuant to 47 U.S.C. § 227 (b)(3)(A)

f.   $500 per violation of the Telephone Consumer Protection Act as provided for in in 47 USCS § 227(b)(3)(B);

g.   $1,500 per violation of the Telephone Consumer Protection Act to the extent the violations were willful 47 USCS § 227(b)(3)(C);

h.   The Plaintiffs be granted general damages and punitive damages for Defendant's conduct alleged in Count V;

i.   Such other relief as the Court shall deem just and proper under the attendant circumstances.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

DIANA MEY

8

BY COUNSEL

BY:   /s/Benjamin M. Sheridan
      Benjamin M. Sheridan (# 11296)
      *Counsel for Plaintiff*
      Klein & Sheridan, LC
      3566 Teays Valley Road
      Hurricane, WV 25526
      (304) 562-7111
      Fax: (304) 562-7115